Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| JEANNETTE TORRES TORRES<br><br>Apelante<br><br>v.<br><br>AMBITIOUS CORP.<br><br>Apelada | TA2026AP00233 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>SJ2024CV02113<br><br>Sobre:<br>Procedimiento Sumario instado al Amparo de la Ley 2 de 17 de octubre de 1967<br>Daños y Perjuicios<br>Reclamación de Salarios<br>Represalias<br>Despido Injustificado |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

El 3 de marzo de 2026, la señora Jeannette Torres Torres (señora Torres Torres) presentó ante este Tribunal de Apelaciones un recurso de *Apelación*. Mediante este, nos solicitó que revoquemos la *Sentencia Final* emitida y notificada el 19 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Por virtud del aludido dictamen, el foro primario desestimó en su totalidad la *Querella* por despido injustificado y represalias en el empleo incoada por la señora Torres Torres contra Ambitious Corp. (en adelante, Ambitious).

Con el beneficio de la parte apelada y conforme a la evidencia presentada, por las razones que más adelante explicamos, **revocamos** el dictamen apelado a la luz de las exigencias de la Ley 80 y las obligaciones patronales. En cuanto a las reclamaciones por represalias, **confirmamos** el recurso apelado.

**-I-**

La señora Torres Torres instó una *Querella* por despido injustificado y represalias. Entre otras cosas, alegó que trabajó para Ambitious desde el 30 de mayo de 2022 hasta que fue despedida en febrero de 2024, sin justificación. Por su parte, indicó que, desde junio 2022 cuestionó las operaciones ilegales de la empresa, lo que suscitó un ambiente hostil y represivo contra su persona. Por los actos señalados, la señora Torres Torres solicitó una suma no menor de $500,000.00 en concepto de daños emocionales; una suma no menor de $2,400.00 mensuales por salarios dejados de devengar y el pago de la mesada. Además, reclamó las aportaciones de seguro social / o medicare, por la cantidad de $3,855.60, que según ella, Ambitious nunca aportó.[1]

El 18 de marzo de 2024, Ambitious contestó la *Querella*. En síntesis, sostuvo que el despido de la apelante fue justificado. Mientras, negó las alegaciones de actos en represalias y arguyó que el despido se debió a un incidente donde la apelante retuvo dinero en efectivo que suscitó pérdidas en el negocio.[2]

Mas adelante, específicamente el 3 de julio de 2024, la apelante suscribió una *Moción Solicitando Sentencia Sumaria Parcial*.[3] Argumentó que, conforme la evidencia que anejó a su escrito no existía controversia sobre veintinueve (29) hechos medulares. Basándose en lo anterior, afirmó que trabajó en Ambitious en concepto de empleada y que su despido fue injustificado, por lo que debía dictarse sentencia a su favor en cuanto a esto. En respuesta, el 12 de agosto de 2024, la parte apelada instó recurso en oposición. Allí alegó que existían hechos medulares en controversia que

---

[1] Véase, Sistema Unificado de Manejo de Administración de Casos del Tribunal de Primera Instancia, (SUMAC TPI), Entrada Núm. 1.

[2] *Íd.*, Entrada Núm. 12.

[3] *Íd.*, Entrada Núm. 66.

impedían la resolución sumaria del pleito, por lo que peticionó al TPI que declarara la solicitud de sentencia sumaria instada por la apelante.[4]

Atendidos ambos escritos, el 9 de enero de 2025, el foro primario emitió *Sentencia Parcial* en la que determinó que, conforme al grado de control suscitado por el patrono, la señora Torres Torres fue contratada como empleada. Ahora, denegó atender por la vía sumaria la causa de acción en torno al despido. En consecuencia, declaró Ha Lugar la solicitud de sentencia sumaria parcial en atención a la naturaleza de la contratación, negándose atender sumariamente la petición para adjudicar el despido.

Atendido lo anterior, el 10, 11 y 12 de junio de 2025 el TPI celebró el juicio en su fondo. Durante el desfile de prueba, la apelante presentó el testimonio de la señora Dharma Martínez Montero (señora Martínez Montero), así como el suyo propio. Mientras tanto, por la parte apelada testificó la señora Kiara Castillo Vázquez (señora Castillo Vázquez) y el señor Christian Ramos Fernández (señor Ramos Fernández).

Sometido el caso por la apelante, Ambitious presentó una *Moción de Desestimación* al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 LPRA Ap. V. Escuchados los argumentos de las partes, el foro primario denegó resolver la solicitud sin la presentación de la prueba de Ambitious. Aquilatada la prueba de ambas partes, el 19 de febrero de 2026, el TPI emitió *Sentencia* en la que, formuló las siguientes determinaciones de hechos incontrovertidos:

1. La querellante obtuvo un bachillerato en administración de oficinas y trabajó en el Departamento de Hacienda durante 20 años en el área de rentas internas.

2. La querellante fue contratada por Ambitious por su experiencia de trabajo previo en hacer nóminas y contabilidad en procesos de oficina relacionados con pagos, así como por haber trabajado en el Departamento de Hacienda, aunque no era contable ni CPA.

3. Entre otras funciones, la querellante era la encargada de preparar las nóminas de los empleados de Ambitious, incluyendo la suya propia.

---

[4] SUMAC TPI; Entrada Núm. 75.

4. La querellante se desempeñaba en funciones administrativas y financieras dentro de Ambitious, al punto de considerarse a sí misma como la "gerente de finanzas" de la empresa. Asimismo, en determinadas ocasiones quedaba a cargo de la operación del negocio, incluyendo la responsabilidad de abrir y cerrar las instalaciones.

5. Como parte de sus funciones, la querellante preparaba los cheques de pago a los empleados de Ambitious.

6. La querellante fue compensada por hora trabajada; inicialmente a razón de doce dólares ($12.00) por hora y, posteriormente desde mayo de 2023, a quince dólares ($15.00) por hora. El aumento salarial otorgado a la querellante respondió a que esta informó que contaba con otra oferta de empleo y a que la empresa enfrentaba escasez de personal. Ambitious decidió igualar dicha oferta para retenerla.

7. Durante el tiempo trabajado, a la querellante no se le hicieron retenciones de Seguro Social ni Medicare. Tampoco se le entregaron formularios W-2 ni el Formulario 480.

8. La Sra. Dharma Martínez Montero es la encargada de las finanzas de Ambitious; y se considera como vicepresidenta dentro de la empresa. En documentos de la empresa, la Sra. Martínez Montero aparece identificada como secretaria.

9. La Sra. Dharma Martínez Montero es la esposa del presidente de Ambitious, el Sr. Christian Ramos Fernández.

10. Según el testimonio de la Sra. Martínez Montero, la querellante fue contratada para que, entre otras funciones, realizara la retención contributiva de los empleados de Ambitious.

11. En el 2023, Ambitious contrató una compañía externa para manejar el proceso de retenciones contributivas. A la querellante se le asignó aprender dicho proceso, en su carácter de encargada de las nóminas.

12. Según la querellante, ella no tenía ninguna obligación de hacer las retenciones contributivas.

13. La querellante aceptó que solicitó por primera vez los comprobantes de retención en abril de 2023, alegadamente para que su contable completara su planilla contributiva, aun cuando ya había presentado su planilla el 17 de febrero de 2023.

14. La querellante sostuvo que solicitó los comprobantes de retención en abril de 2023 a petición de su contable; sin embargo, la planilla presentada ese año no fue preparada por un contable.

15. La querellante declaró bajo pena de perjurio no haber recibido ingresos, pese a que trabajó para un "dealer" y posteriormente para Ambitious durante el periodo contributivo.

16. Durante el tiempo que la querellante laboró para Ambitious, a otros empleados sí se les realizaban retenciones contributivas (a los vendedores se les retenía el 10%).

17. La querellante conocía que debía reportar al Departamento de Hacienda los ingresos devengados en Ambitious, aun cuando no se le hubieran realizado retenciones.

18. La querellante no reportó los ingresos que devengó en Ambitious al Departamento de Hacienda.

19. La querellante completó y presentó sus planillas correspondientes a los años contributivos 2022 y 2023. La Sra. Martínez Montero le solicitó a la querellante que hiciera su W2 como parte de sus funciones como encargada de nómina.

20. En octubre de 2023, al volver a solicitar los comprobantes de retención, la querellante alegó que comenzó a experimentar un ambiente hostil.

21. La querellante continuó desempeñando las mismas funciones que se le habían asignado y realizando horas extras, y no realizó un reclamo por escrito alegando ambiente hostil.

22. Según la querellante, el ambiente hostil consistía en que los dueños de Ambitious le cuetionaban su trabajo.

23. La querellante realizaba trabajos en horas extra (*overtime*), y esta conocía que para ello se requería autorización previa del patrono.

24. La querellante tenía conocimiento de que el trabajo en horas extra debía ser autorizado por el Sr. Christian Ramos Fernández.

25. La querellante tenía conocimiento de que trabajar horas extra sin autorización podía conllevar medidas disciplinarias.

26. La querellante cobraba horas extra y se preparaba su propia nómina, incluyendo el pago de dichas horas. Su horario de trabajo era de 9 a. m. a 6 p. m.

27. En diciembre de 2023, el Sr. Christian Ramos Fernández amonestó verbalmente a la querellante por trabajar horas extra sin autorización. Específicamente, por haberse quedado trabajando un día hasta las 9:00 p.m. sin autorización ni notificación. Específicamente, ese día, el Sr. Ramos Fernández le había autorizado trabajar hasta las 7:00 p. m.

28. En esa ocasión, la querellante estaba trabajando horas extras junto a la Sra. Kiara Castillo, a quien supervisaba directamente. De la prueba presentada surge que no se amonestó a la Sra. Castillo, ya que se entendió que, al estar bajo la supervisión de la querellante, la responsabilidad recaía principalmente sobre esta última.

29. La querellante también recibió una amonestación verbal por notificar tardíamente la documentación al contable de la empresa. De la prueba testifical se desprende que la querellante remitía con retraso la información relacionada al IVU y los denominados "entregables".

30. En otra ocasión, la querellante fue amonestada verbalmente por retirarse de sus labores antes de culminar su horario sin ofrecer explicación alguna o contestar mensajes.

31. La Sra. Martínez Montero participó en la toma de decisiones relacionadas con el despido de la querellante. No redactó la carta de despido, pero la revisó y estuvo de acuerdo con su contenido.

32. La carta de despido fue preparada por el contable de la empresa, el Sr. José Albelo, e incluyó un cheque con fecha del 24 de febrero de 2024 por la cantidad de $5,780.00.

33. La carta de despido fue firmada por el Sr. Christian Ramos Fernández.

34. La cantidad de $5,780.00 fue desglosada en $5,600.00 de mesada por los años de servicio y $180.00 en pago por vacaciones acumuladas. Véase, Exhíbit 9 parte querellante.

35. En la carta de despido fechada al 13 de febrero de 2024 se indicó como razón la "reestructuración y economía de la empresa". Véase, Exhíbit 7 parte querellante. No obstante, tanto la Sra. Martínez Montero como el Sr. Christian Ramos Fernández, reconocieron que la razón principal del despido fue un descuadre de dinero y la alteración de un documento relacionado con unos precios. No obstante, la Sra. Martínez Montero aclaró que, en efecto, la empresa enfrentaba problemas económicos.

36. Surge de los testimonios que la razón consignada en la carta de despido fue para "proteger" a la querellante por el respeto y aprecio que se le tenía. El lenguaje utilizado en la carta de despido fue seleccionado con el propósito de no afectar la reputación e imagen profesional de la querellante, ya que los dueños de Ambitious estiman a sus empleados como si fueran familia.

37. Según el Sr. Christian Ramos Fernández, la decisión de despedir a la querellante respondió a un patrón de situaciones que, a su juicio, se venían repitiendo. Entre las razones mencionadas señaló que los "entregables" no se remitían a tiempo al contable, que la querellante trabajaba horas extras sin autorización, que existían conflictos con otros empleados y que entendía que esta saboteaba el avance de los asuntos de Ambitious, así como por el descuadre del dinero en febrero de 2024.

38. La querellante era la responsable del manejo de la documentación que se le debía remitir al contable de la empresa.

39. El Sr. Christian Ramos le llamó la atención a la querellante por la tardanza incurrida por esta en la entrega de dicha documentación.

40. Según la prueba testifical, al inicio de su empleo en Ambitious, la querellante tenía entre sus funciones realizar los cuadres. Posteriormente comenzaron a surgir descuadres, por lo que la Sra. Martínez Montero determinó retirarle dichas funciones.

41. De la evidencia presentada se desprende que de las ventas que hacían los vendedores de Ambitious, se recibían pagos en efectivo, cheque o tarjeta, los cuales eran entregados en la oficina, donde se contaban, se consignaba su recepción y se realizaba un cuadre semanal. La Sra. Martínez Montero advirtió que las fechas de ingreso del dinero no concordaban,

por lo que relevó a la querellante de esa responsabilidad. Conforme al testimonio, una vez la Sra. Kiara Castillo asumió la función de realizar los cuadres, la situación mejoró y el proceso continuó con normalidad.

42. Para los meses de enero y febrero de 2024, la empleada Kiara Castillo realizaba los cuadres de ventas (de las entradas y salidas de dinero que recibía Ambitious en su actividad de negocio).

43. En febrero de 2024, la Sra. Kiara Castillo se ausentó un día, por lo que la querellante la sustituyó en la realización del cuadre.

44. A su regreso, la Sra. Kiara Castillo testificó que la querellante se le acercó para informarle que ella intentó realizar el cuadre, pero que este no "cuadraba".

45. En el cuadre correspondiente a la semana del 7 al 14 febrero de 2024, la Sra. Kiara Castillo identificó que se registró el pago de seiscientos dólares ($600.00) por un booth de Caguas de un supermercado cuyo costo era de cuatrocientos dólares ($400.00).

46. La Sra. Kiara Castillo notificó a la Sra. Martínez Montero y al Sr. Christian Ramos la discrepancia en el cuadre realizado por la querellante y al otro día se le notificó a la querellante de su despido.

47. La discrepancia en el cuadre de febrero de 2024 fue la razón principal que motivó la decisión de despedir a la querellante.

48. La razón del despido no guardó relación con las solicitudes que hizo la querellante a los dueños de Ambitious de los comprobantes de retención contributiva.

49. La razón del despido no guardó relación con los señalamientos que pudo realizar la querellante sobre la falta de retención de seguro social o medicare.

50. La querellante admitió que el Sr. Christian Ramos y la Sra. Dharma Martínez tenían autoridad para cuestionar su desempeño laboral.

51. La querellante admitió que, de violarse reglas básicas del empleo, un empleado puede ser amonestado verbalmente. La empresa no contaba con un manual de empleados para febrero de 2024.

52. El Sr. Christian Ramos comunicó a otros empleados que la querellante había renunciado, lo cual no era correcto.

53. A la querellante no le entregaron amonestaciones por escrito durante su empleo.

54. En junio de 2022, la querellante se enteró que Ambitious no contaba con permiso de uso, bomberos y servicio sanitario, lo cual notificó al Sr. Ramos y a la Sra. Martínez.

55. Luego de informar que Ambitious carecía de ciertos permisos, la querellante continuó trabajando para Ambitious por aproximadamente un año y ocho meses adicionales.

56. En junio de 2022, la querellante no alegó que existiera un ambiente hostil o que se le modificaron sus tareas.

57. La querellante sostuvo que no le fueron removidas las funciones relacionadas con los cuadros cuando comenzó a trabajar para Ambitious, pero ello es contradictorio a su propio testimonio y al de los demás testigos.

58. La querellante trabajó para otra compañía a partir de junio de 2024 por aproximadamente tres meses y luego trabajó en American Eagle, sin especificar la cuantía total devengada en dichos empleos.

59. En la planilla presentada en el 2024, la querellante no reportó los ingresos recibidos durante el 2023 provenientes de Ambitious, aun cuando conocía la cantidad generada.

60. En sus planillas correspondientes a los años 2023 y 2024, la querellante reportó que sus ingresos provenían únicamente de su retiro, omitiendo otros ingresos recibidos.

61. La querellante no reconoció los señalamientos e intervenciones del Sr. Christian Ramos relacionados con su desempeño como amonestaciones formales.

Así las cosas, el foro recurrido concluyó que la causa de acción por despido injustificado al amparo de la Ley Núm. 80 era improcedente. Tampoco encontró probada la causa de acción por represalias. Por consiguiente, declaró Ha Lugar la moción de desestimación *non suit,* sometida por Ambitious y en su consecuencia desestimó con perjuicio la presente causa de acción. Inconforme con tal determinación, el 3 de marzo de 2026, la señora Torres Torres sometió el recurso de epígrafe y le imputó al TPI la comisión de los siguientes errores:

PRIMER ERROR: Erró el Tribunal de Primera Instancia al determinar que el despido de la querellante fue justificado bajo la Ley 80, ignorando la ausencia de un patrón de conducta impropia y validando razones contradictorias del patrono.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al no reconocer que la querellante fue víctima de represalias bajo la Ley 115, a pesar de haber establecido un caso prima facie de actividad protegida.

TERCER ERROR: Erró el Tribunal de Primera Instancia al no adjudicar la reclamación de salarios y retenciones contributivas, ignorando que el estatus de empleada ya había sido determinado en la Sentencia Parcial.

El próximo día, la apelante sometió ante esta Curia una *Moción Sometiendo Transcripción de la Prueba Oral*. Atendido el recurso, el 4 de marzo de 2026, emitimos una *Resolución* concediéndole a la parte apelada término para que presentara sus objeciones, así como la oposición al recurso, luego

de presentado el alegato suplementario de la apelante. Así las cosas, acogimos la transcripción, según estipulada por las partes, y concedimos extensión del término conforme nos fue solicitado. Por lo que, el 6 de abril de 2026, la señora Torres Torres instó su alegato suplementario.

Por su parte, y en cumplimiento, el 6 de mayo de 2026 Ambitious presentó su *Alegato en Oposición a la Apelación*. Allí, planteó que el foro inferior actuó correctamente al dictar la sentencia apelada y desestimar la causa de acción en su totalidad, tras concluir conforme el expediente, que el despido de la señora Torres Torres se debió a un descuadre en las ventas de la empresa. También, aduce que el foro primario concluyó correctamente que no existe vínculo causal entre el despido del apelante y una actividad protegida, y mucho menos proximidad temporal entre las mismas, que constituya actuación en represalia. Además, argumenta que la apelante tampoco presentó evidencia fehaciente que sitúe al Tribunal en posición para adjudicar las alegadas deficiencias contributivas.

Con el beneficio de ambas partes, damos por sometido el asunto y procedemos a resolver.

**-II-**

*A.*

La Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 del 30 de mayo de 1976, según enmendada, 25 LPRA Sec. 185a, (Ley 80), tiene como propósito proteger a los empleados de actuaciones arbitrarias del patrono al establecer remedios económicos que desalienten los despidos injustificados. *Méndez Ruiz v. Techno Plastics Industries, Inc.*, 2025 TSPR 68, 216 DPR ___, al mencionar a *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 770 (2022). La mencionada pieza legislativa dispone que todo empleado que trabaja para un patrono mediante remuneración, sin tiempo determinado, y que fuere despedido injustificadamente, tiene derecho a recibir una indemnización a tales efectos. *Íd.*, al citar el Art. 1 de la Ley 80), 29 LPRA

sec. 185a. Este resarcimiento se conoce comúnmente como "mesada". *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Esta constituye el remedio exclusivo disponible a un empleado cesanteado injustificadamente, a menos que no existan otras causas de acción independientes al despido. *Íd.*, pág. 36-37.

De esta forma, el propósito de la Ley 80 es dar mayor protección a los trabajadores, otorgándoles justa compensación ante un despido injustificado. Cabe señalar, dicho estatuto establece una presunción contra del patrono en la cual el despido del empleado es injustificado hasta tanto el patrono, quien tiene el peso de la prueba, demuestre justa causa para su acción. *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004); *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 378 (2001).

La Ley 80 no establece qué constituye un despido injustificado. No obstante, el aludido estatuto informa sobre varios escenarios que pueden liberar al patrono de responsabilidad por conducta atribuible al empleado. Así pues, se reputará justa causa para el despido si el empleado: (1) ha exhibido un patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, ha realizado su trabajo tarde o negligentemente o en violación a las normas aplicables, o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento y los cuales le han sido suministrados oportunamente. *Íd*. (Énfasis nuestro).

De igual forma, se entenderá que el despido fue justificado si sucede a consecuencia de cierre, reorganización o reducción de la empresa, en particular: el cierre total, temporero o parcial de las operaciones del establecimiento; los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; o reducciones en empleo necesarias debido a una reducción en el volumen de

producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA Sec. 185b.

Aun así, es importante recordar que las circunstancias representativas de justa causa enumeradas en el discutido estatuto son meros ejemplos de acontecimientos asociados a un despido. Ello así, ya que este no puede prever el universo de incidencias que pueden surgir en un entorno laboral y que desemboquen en la cesantía de un empleado. *León Torres v. Rivera Lebrón*, *supra*, al citar a *SLG Torres Matundan v. Centro Patología*, 193 DPR 920 (2015). Podemos ver que, entre las causas reconocidas como justa causa para el despido de un empleado, se encuentran algunas relacionadas a actuaciones del patrono dirigidas a la administración de su negocio, principalmente por razones de índole económica que surgen conforme la operación diaria de las empresas. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 376 (2001).

En virtud del Artículo 2(e) de la Ley 80, un patrono podrá despedir empleados sin tener que pagar la compensación fijada por dicho estatuto, si esta decisión se toma como parte de una reorganización empresarial que así lo requiere. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 426. Así pues, un patrono puede modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad, siempre que responda a una restructuración *bona fide*. *Íd*. Asimismo, el inciso (f) del Artículo 2 de la Ley 80 autoriza a una empresa a disminuir su plantilla laboral como una medida necesaria para limitar los gastos debido a una situación económica provocada por la baja en la producción, ventas o ganancias. No obstante, ello no implica que toda

merma en ventas o ganancias se traduzca en justa causa para un despido, aplicando únicamente a aquellas situaciones en las cuales la aludida disminución sea sustancial al punto que atente contra la continuidad de la empresa. *Íd.* **Para poder justificar el despido al amparo de cualquiera de estas modalidades el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad, o de la alegada disminución en la producción, ventas o ganancias, según corresponda.** *Íd.* (Énfasis nuestro)

Debemos destacar que en aquellos despidos bajo los incisos (d), (e) y (f) del Artículo 2 de la Ley 80, la empresa debe retener los empleados de mayor antigüedad condicionado a que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos. Ello, siempre y cuando el empleado de más tiempo en la empresa cuente con las destrezas necesarias para realizar las tareas asociadas con el puesto que pasa a ocupar, o que pueda adiestrarse para realizarlas en un tiempo corto y a un costo mínimo. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 428.

*B.*

La Ley de Represalias Contra Empleado por Ofrecer Testimonio y Causa de Acción, Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*, (Ley 115), prohíbe a todo patrono "despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico". 29 LPRA sec. 194a. Ello, siempre que dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. *Íd.*

Para que se configure una causa de acción al amparo de la Ley 115, *supra*, "[e]l empleado deberá probar la violación mediante evidencia directa o circunstancial". 29 LPRA sec. 194a. Para ello, deberá probar *prima facie*: 1) que participó en una actividad protegida por el estatuto, y 2) que fue subsiguientemente despedido, amenazado o discriminado en el empleo. *Íd.;* Véase también, *Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997). Si se probara lo anterior, "el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido". *Íd.* De así hacerlo, corresponderá al empleado "demostrar que la razón alegada por el patrono era un mero pretexto para el despido". *Íd.*

En virtud de lo antes indicado, para tener una causa de acción bajo la Ley 115, *supra*, un empleado debe probar- mediante prueba directa o indirecta- un nexo causal entre la conducta del demandado y el daño sufrido. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *Feliciano Martes v. Sheraton*, 182 DPR 368, 395-396 (2011). No obstante, **requiere un elemento de proximidad temporal (poco tiempo) entre la actividad protegida y la acción adversa sufrida por el empleado.**

Si el empleado opta por el mecanismo directo, el empleado debe ampararse en prueba directa o circunstancial para demostrar el nexo causal entre la conducta y el daño sufrido. Por la vía indirecta, corresponderá al empleado establecer *prima facie* un caso de represalia. 29 LPRA sec. 194b; *Rivera Menéndez v. Action Services*, *supra*, pág. 445. Esto último lo logrará si prueba que: (1) participó en una actividad o conducta protegida por ley; (2) y que, posteriormente, sufrió una acción disciplinaria o adversa por parte del patrono. Es decir, que es necesario que el empleado haya sido despedido, amenazado o discriminado en el empleo, subsiguientemente a su participación en una actividad protegida.

En cuanto a la exigencia de que exista un nexo causal, nuestro ordenamiento ha seguido este enfoque, y se han establecido los siguientes

criterios: (1) si el empleado fue tratado de forma distinta que otros empleados; (2) si existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. *Feliciano Martes v. Sheraton*, *supra*, en la pág. 398. La suficiencia de la proximidad temporal como prueba exclusiva de causalidad, dependerá de cuán cerca en el tiempo está la actividad protegida ejercida por el empleado y la acción adversa llevada a cabo por el patrono**.** *Íd.,* pág. 399. Ahora, no toda acción de represalia se configura dentro de lo que pudiera catalogarse como poco tiempo, por lo que la proximidad temporal como inferencia de causalidad, resulta insuficiente. Por tanto, se requiere "elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa". *Íd*, pág. 400.

Lo antes indicado sólo aplica al empleado y su necesidad de establecer un caso *prima facie* por represalias. De esta forma, si el patrono logra fundamentar una razón no represiva para su decisión, **"se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo"**. *Íd.* (Énfasis suplido)

**-III-**

Según mencionamos en la exposición narrativa del tracto procesal, la apelante señala la comisión de tres errores. Mediante la discusión de su primer error, cuestiona la apreciación de la prueba efectuada por el foro primario. Con ese propósito, en su discusión expone que inicialmente Ambitious justificó el motivo de la cesantía por razón de reestructuración empresarial, sin embargo, una vez instada la querella, desistió de dicha justificación y acreditó el despido a razones alternas. De igual forma, en la

discusión del segundo de sus errores, asevera que las razones del despido obedecieron a continuos señalamientos de la señora Torres Torres sobre las ilegalidades contributivas de la empresa.

Por último, al discutir su tercer error, la apelante arguye que el foro primario omitió responsabilizar a la parte apelada frente a las agencias administrativas correspondientes por las contribuciones sobre ingreso adeudadas ante el Departamento de Hacienda, así como la retención patronal a ser remitida al IRS en su favor. En particular, fundamentó que es un hecho incontrovertido que la señora Torres Torres laboró para Ambitious en concepto de empleada y que nunca se le realizaron retenciones contributivas en contravención a sus obligaciones patronales.

En contrario, al oponerse al recurso de apelación, Ambitious afirma que la evidencia admitida en juicio demostró deficiencias en el desempeño laboral de la apelante que justificaron el cese inmediato de sus funciones. De la misma manera, asevera que no se equivocó el TPI al declarar la inexistencia de represalias, tal cual estableció en el dictamen apelado, toda vez que el expediente demostró razón legítima para el cese de la señora Torres Torres. A su vez, discute que el TPI estaba impedido de dilucidar sobre los asuntos contributivos, ante la carencia de prueba que revelara los pagos adeudados.

A los fines de atender estos argumentos hemos examinado minuciosamente el expediente ante nuestra consideración, particularmente, la prueba testifical según surge de la transcripción estipulada por las partes, así como la evidencia documental presentada y acogida. De la misma forma, hemos evaluado la postura de las partes y los dictámenes emitidos por el foro inferior. En atención a nuestro estudio, y en particular las circunstancias particulares presentes en la causa de autos, encontramos que hubo error manifiesto en la apreciación de la prueba por parte del foro primario en cuanto a la causa de despido injustificado.

En el presente caso es un hecho incontrovertido que Ambitious le remitió una carta de despido a la apelante, debidamente firmada por el señor Ramos Fernández, con fecha del 13 de febrero de 2024. La mencionada misiva reza como a continuación transcribimos:

Estimada Sra. Torres:

Por la presente le queremos informar que efectivo en el día de hoy usted queda cesanteada, **el motivo es la reestructuración y economía de la empresa.** Le agradecemos su aportación a nuestra compañía y le deseamos éxitos en sus planes futuros. (Énfasis nuestro)

Este hecho, también fue admitido por la Sra. Dharma Martínez Montero, secretaria de Ambitious, durante su testimonio.[5] De hecho, la prueba desfilada durante el juicio evidenció que al momento en que se despidió a la señora Torres se le informó verbalmente que estaba siendo despedida por reestructuración y economía y que fue una semana después que se le hizo entrega de la carta de despido.[6] La prueba presentada durante el juicio, sin embargo, no demostró evidencia acreditativa de un plan de reorganización o asuntos dirigidos a la restructuración de la empresa alegada por Ambitious en su carta de despido. Es más, durante el juicio, la señora Martínez Montero admitió que no se preparó ningún documento con el fin de evaluar la alegada reorganización de la compañía. Surge que, aunque admitió que entre enero y febrero de 2024 la compañía tenía problemas económicos, aceptó que no se despidió a ningún otro empleado.[7] Inclusive, y según su propio testimonio, nunca han tenido problemas de cash Flow para pagarle al personal.[8]

Quiere decir que más allá de fijar la existencia de problemas económicos, la parte apelada omitió demostrar con evidencia fehaciente las acciones previstas para modificar su manera de hacer negocios y la necesidad de cesantear a sus empleados para sostener dicha estructura de

---

[5] Véase, TPO del 10 de junio de 2025, pág. 56, líneas 1-14.
[6] *Íd.,* pág. 239, línea 21 a la pág. 240, línea 3 y pág. 238. Líneas 1-6.
[7] *Íd.,* pág. 71, línea 21 a la pág. 72, línea 14.
[8] *Íd.,* pág. 73, líneas 15-17.

negocio. De modo que la evidencia testifical y documental incoada por la apelada no acreditó la justificación brindada por la parte apelada en la carta inicial de despido. En cambio, reveló sendas incongruencias que resultan fútiles para cumplir con las exigencias de la Ley 80. Peor aún, la prueba testifical revela una conducta altamente sospechosa por parte de Ambitious que produce al menos recelo y desconfianza.

Si bien inicialmente la empresa aludió a una de las circunstancias provista por el Artículo 2 de la Ley 80, una vez presentada la querella en su contra al suscribir sus respectivas defensas afirmativas, convenientemente alegó que la causa del despido de la señora Torres Torres se debió a "que la querellante había retenido un dinero en efectivo y alteró documentos para esconder tal hecho"[9]. De igual forma, durante el juicio, la parte apelada atestiguó que la razón del despido obedeció a un patrón de ejecuciones negligentes por parte de la apelante que trastocaban la ordenada marcha y normal funcionamiento de la empresa. Sobre ello, incluyó trabajar tiempo adicional sin permiso de su supervisor- particularmente en una ocasión cuando su hora de salida se registró a las 9:00 de la noche- y entregar trabajo tardío. Además, una vez demandada, a su favor manifestó que la razón inmediata para el cese de las funciones precisa sobre un descuadre ocurrido el 13 de febrero de 2024, mientras la apelante sustituía a la señora Castillo Vázquez en el área de ventas.[10]

En nuestro ordenamiento jurídico existe una política pública dirigida a la protección de los trabajadores contra las destituciones **sin justa causa**. La Ley 80 no prohíbe a los patronos despedir a un empleado, pues en Puerto Rico no existe una prohibición absoluta contra el despido.[11] No obstante, el esquema de protección laboral instaurado mediante el aludido estatuto

---

[9] Véase, Entrada Núm. 12 en SUMAC.
[10] Véase, TPO del 12 de junio de 2025, pág. 128, líneas 13-18.
[11] *Santiago v. Kodak Caribbean, Ltd.*, 129 DPR 763 (1992).

aspira dentro de su finalidad dual a desalentar que los trabajadores sean injustificadamente despedidos de su empleo.[12]

En el presente caso, notamos que Ambitious falló en cumplir con la exigencia de probar una modificación en el funcionamiento normal del negocio o acreditar que la cesantía fue producto de un proceso de reestructuración, **según así le fue informado a la señora Torres cuando fue despedida**. Por el contrario, tras haberse presentado *Querella* en su contra dispuso sobre actuaciones alternas inconsecuentes a las justificaciones inicialmente previstas. Ciertamente el expediente judicial conduce a demostrar que el despido resultó ser un capricho y no una decisión de negocio alcanzada por Ambitious. Concluir en contrario y sostener tales justificaciones resulta incompatible con las exigencias de la Ley 80 para la protección contra las destituciones sin justa causa.

No podemos avalar dicha conducta bajo circunstancia alguna. Hacerlo, sería respaldar el que un patrono arguya para despedir a un empleado cualesquiera de las razones que la Ley 80 establece como justa causa para luego, en caso de ser demandado, configurar una justificación adversa a la inicialmente informada. Lo contrario, sería detrimental a los objetivos del mencionado estatuto. Máxime, cuando como ocurre en el presente caso, no se puso en posición al empleado despedido sobre las supuestas razones de la cesantía que ante el tribunal pretende sostener.

Cabe destacar que a pesar de alegar ante el TPI que la discrepancia en el cuadre fue la razón principal que motivó la decisión de despedir a la señora Torres Torres, la realidad es que la prueba vertida con el fin de así demostrarlo contiene discrepancias que, a nuestro juicio, no debieron despacharse con la facilidad que lo hizo el foro primario. Por el contrario, las diferencias en los testimonios vertidos durante el juicio en cuanto a la fecha exacta del despido de la querellante reconocidas por el propio

---

[12] *Romero v. Cabrer Roig*, 191 DPR 643 (2014).

tribunal merecen mayor consideración que la brindada por este. Más aun, dado al hecho de que, por ejemplo, durante su testimonio, la Sra. Kiara Castillo Vázquez manifestó que **el día 14 de febrero de 2024**, a las 7:05 de la noche le notificó a la Sra. Dharma Martínez Montero y al Sr. Christian Ramos lo ocurrido con el cuadre.[13] Ciertamente, el que la fecha indicada por esta fuera una posterior a la carta de despido, sumado a que la fecha en la que alegadamente la señora Torres Torres fue despedida no es un hecho claro y concreto por los propios testimonios vertidos mereció mayor circunspección que la que recibió. Por consiguiente, resolvemos que el despido de la señora Torres Torres fue uno injustificado y, siendo así, le corresponde el pago de la mesada.

Por otro lado, en su segundo error reseñado, la apelante sostiene y discute que participó en una actividad protegida y posteriormente fue despedida, por lo que la reclamación sometida al amparo de la Ley 115 debió concederse. Alegó que, en el año 2022, le señaló a Ambitous sobre las operaciones sin permiso que acarreaba la empresa. En abril del año 2023, por primera vez exigió las retenciones salariales y, posteriormente, en octubre del mismo año intensificó su petición, lo que provocó un ambiente hostil en la empresa.

En el caso de autos, durante su testimonio la señora Torres Torres manifestó que las actividades ilegales que le reportó al señor Ramos durante el año 2023 fue la falta de permiso de la compañía y las retenciones a los empleados. También, declaró que entendía que su despido fue en represalias y respondió a que le cuestionó a su patrono sobre los comprobantes de retención y sobre los permisos de la compañía.[14] De esta manera, probó mediante evidencia circunstancial el primer criterio requerido para una acción bajo el palio de la Ley 115. Precisamente, las

---

[13] TPO del 12 de junio de 2025, página 93, líneas 15-21.
[14] TPO del 10 de junio de 2025, pág. 231, líneas 1-4; pág. 41, líneas 16-19 y pág. 242, líneas 4-8.

reclamaciones instadas contra su patrono, sobre las ilegalidades sostenidas en la empresa, constituyen una actividad protegida conforme el marco estatutario.

Ahora bien, el segundo criterio requiere que el empleado haya sido despedido, amenazado o discriminado en el empleo, subsiguientemente a su incursión en la actividad protegida. Jurisprudencialmente nuestro alto foro ha reconocido que para probar el nexo causal el empleado deberá sustentar que tal acción adversa ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656,671 (2017)

De los hechos del caso surge que la señora Torres Torres **comenzó a trabajar para Ambitious en mayo de 2022 y al mes siguiente le informó a su patrono sobre la falta de permisos que ocupaba la empresa.** Empero, continuó laborando para Ambitious sin cambios sustanciales en sus responsabilidades laborales. **Más adelante, para los meses de abril y octubre de 2023** solicitó del patrono las retenciones contributivas patronales. Del mismo modo, continuó sus funciones según configuradas previo a los señalamientos instados. Así, pasados cuatro meses desde la última notificación, esta fue cesanteada por Ambitious.

Para los fines del despido por represalias, opinamos que el tiempo transcurrido en el caso de epígrafe entre la actividad protegida y la acción adversa, no conlleva suficiente proximidad temporal para inferir el nexo causal entre ambos eventos. Más aun, cuando no evidenció que las condiciones laborales cambiaron o que existió un patrón de conducta antagonista en su contra. Por ende, la apelante no probó un caso *prima facie* bajo el palio de la Ley 115.

En cuanto a su reclamo por alegadas represalias, nos parece que la decisión del TPI fue fundamentada, razonada y conforme al derecho aplicable. La prueba en el caso de autos sometida por la señora Torres

Torres no probó la proximidad temporal requerida para configurar una causa de acción en atención a la Ley 115. Consecuentemente, colegimos que el segundo error no se cometió.

Finalmente, sobre el tercer señalamiento de error, es preciso señalar que la sentencia apelada está huérfana de análisis alguno en cuanto a la controversia fijada sobre las retenciones adeudadas al pago salarial de la señora Torres Torres. En la *Sentencia Parcial* dictada en el caso, el foro primario determinó que la apelante trabajó para Ambitous en concepto de empleada. Posteriormente, en su determinación final adjudicó como un hecho incontrovertido que "[d]urante el tiempo trabajado, a la querellante no se le hicieron retenciones de Seguro Social ni Medicare. Tampoco se le entregaron formularios W-2 ni el Formulario 480." Aun así, el TPI omitió dilucidar las retenciones sobre ingreso adeudadas por el patrono. A esos fines, resulta imperativo que el foro primario disponga sobre las cuantías debidas en concepto de retenciones salariales, lo que incluye a su vez el seguro social. Por consiguiente, colegimos que el tercer error se cometió.

En atención a lo antes expuesto, procede devolver el caso al foro primario para que produzca un avalúo sobre el monto adeudado para la fijación de mesada ante el despido sin justa causa resuelto en la presente sentencia. Asimismo, se requiere del TPI determinar el cómputo de las deducciones correspondientes no acreditadas por el patrono sobre los pagos salariales efectuados a la señora Torres Torres durante el tiempo que laboró en Ambitious.

**-IV-**

Por los fundamentos antes expuestos, **revocamos** la sentencia apelada en atención a la causa de acción instada al amparo de la Ley 80 y las deducciones patronales no devengadas. Por otra parte, **confirmamos** la determinación del foro de instancia conforme al reclamo incoado bajo las exigencias de la Ley 115.

Se devuelve el caso al foro primario para la continuación de los procedimientos conforme lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones